384 F.Supp. 214 (1974)
MOTOR CARRIERS COUNCIL OF ST. LOUIS, INC., a corporation, et al., Plaintiffs,
v.
LOCAL UNION NO. 600, affiliate of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.
No. 70C 183 (A).
United States District Court, E. D. Missouri, E. D.
October 3, 1974.
Charles A. Seigel, Charles H. Spoehrer, St. Louis, Mo., for plaintiffs.
Clyde E. Craig, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This is an action brought by plaintiffs, the Motor Carriers Council of St. Louis, Inc., and seventy-nine trucking firms (the trucking firms will hereinafter be referred to as employer-plaintiffs) for damages resulting from the breach of a no-strike clause in a collective bargaining agreement by defendant, Local Union 600, Affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as Local 600). By leave of Court, nineteen of the seventy-nine employer-plaintiffs dismissed their cause of action herein with prejudice. Local 600 maintains its principal office in the City of St. Louis, Missouri. This Court has jurisdiction under Section 301 of the Labor Management Relations Act, 1974, 29 U.S.C. § 185.
This Court previously separated the issues in this case and tried it initially on the question of liability only. In the initial trial this Court found the issue of liability for the employer-plaintiffs and against the defendant, and granted the defendant the right to apply for an appeal on the question of liability. The United States Court of Appeals for the Eighth Circuit took the case on appeal on the question of liability and affirmed this Court's finding on that issue. (486 F.2d 650)
Thereafter, the case proceeded to trial on the question of damages.
Carroll Shelton, Certified Public Accountant of the accounting firm of Shelton *215 & Von Cloedt, prepared exhibits for most of the employer-plaintiffs as to the loss sustained by each during the work stoppage period from April 1, 1970, through May 8, 1970.
The defendant stipulated with respect to said exhibits prepared by Shelton that it would waive the best evidence rule on a representative from each of the said employer-plaintiffs testifying that the figures furnished Shelton for the purpose of preparing the exhibit for said employer-plaintiff were accurately taken from the books and records of the company kept in the ordinary course of business.
Shelton in past years has prepared many business interruption claims with respect to claims for insurance under business interruption policies and has testified in court with respect to many of the claims. Before each employer-plaintiff's exhibit was prepared by the employer-plaintiff, Shelton conferred with a group of approximately twelve employer-plaintiffs, all of whom were ICC carriers, to establish the best method of determining the reconstruction of the operating revenue which would have been earned had there been no interruption in their operations due to the strike and the total expenses that would have incurred with respect to said operations.
All of the employer-plaintiffs involved, except two, were under the ICC regulations, which requires the use of a certain form of accounting procedure. The ICC sets up account numbers for various classifications of operating income and expenses.
After Shelton's conference with the group of employer-plaintiffs, he prepared Plaintiff's Exhibit 2. Plaintiff's Exhibit 2, consisting of several pages, is divided into two categories. The first is a group of what could probably be referred to as ledger sheets, on which account numbers have been inserted, and were prepared for the purpose of recording thereon from the books and records of the carrier in question certain information regarding income and expenses. In addition, on the ledger sheets a column was provided for projected figures. The second part of the exhibit consists of two letters, of one page each, and eight pages of detailed instructions as to how Exhibit 2 should be filled out from the carrier's records and the manner to be used in arriving at the projected figures.
Each of the carriers whom Shelton was assisting was furnished by Shelton & Von Cloedt, the accounting firm of which Shelton was a member, with a copy of Exhibit 2. Shelton testified in detail as to his qualificaions and as to the manner in which Exhibit 1, which is a copy of the ledger sheets from Exhibit 2, was filled in by the employees of Gordon Transports, Inc., according to the instructions which are a part of Exhibit 2. On the first page of Exhibit 1, Shelton made the calculations from the other figures on Exhibit 1 with respect to the loss sustained by Gordon Transports, Inc., due to the work stoppage attributable to the strike in St. Louis. It is not necessary to set out the detailed information that Shelton gave on the preparation of Exhibit 1, since the instructions attached to Exhibit 2 clearly explained how Exhibit 1 was to be prepared, and Shelton testified it was so prepared.
The figures on Exhibit 1 and the other exhibits are accurately transposed from the books of the carrier involved, with the exception of the projection figures. The instruction sheets in Exhibit 2, which set out the manner of arriving at the projection figures, were followed in arriving at the projection figures inserted on the exhibits. In the preparation of the exhibit with respect to each of the carriers which Shelton prepared, the account numbers used in ICC reporting by the carrier were used with respect to revenue and expenses on the exhibits.
Various accounting periods were involved in the preparation of these exhibits with respect to the various carriers, in that some of the firms kept their records on a quarterly basis and some *216 on a monthly basis, and since the period involved during the work stoppage was April 1 to May 8, it was necessary in all instances to include a longer period than this particular period, since the reporting periods overlapped. In order to reconstruct the income and expenses for the period April 1 to May 8, 1970, the income and expenses for the calendar years 1968, 1969 and 1971 were used  in other words, the two years before and the year after the work stoppage. It was necessary with respect to the companies whose operations extended to other areas such as Chicago, Minneapolis and Atlanta, where for a part of the time in question there was work stoppage similar to that in St. Louis, to only allocate to the recapitulation shown on the first page of the various exhibits that part of the loss attributable to St. Louis alone. The expenses are based upon various factors as they are on the format of the ICC reporting forms, including expenses based upon mileage, and various other factors which are normally used in the ICC accounting procedure. Some of the expenses are attributable to the overall operation of the company, while others pertain only to St. Louis.
The preparation of Exhibit 1, which dealt with the carrier, Gordon Transports, Inc., and Exhibit 3, which dealt with Middlewest Freightways, Inc., was explained in detail by Shelton, as was the loss attributable to the St. Louis walkout, which loss was based on the figures set out on the respective Exhibits and inserted by Shelton.
The testimony with respect to Gordon Transports, Inc., and its Exhibit 1, was heard on June 10, 1974. Following Shelton's testimony with respect to the exhibit, a Mr. Deavco, the assistant comptroller of Gordon Transports, Inc., testified that various figures shown on Exhibit 1, except for the projected figures, were entered by him from the company books. Following the testimony of Deavco, it became necessary to recess the trial because of matters with which we are not here concerned, and when the trial was resumed Shelton testified with respect to Exhibit 3 pertaining to Middlewest Freightways, Inc., in the detail as to which he had testified with respect to Exhibit 1 pertaining to Gordon Transports, Inc.
Following Shelton's testimony with respect to the Middlewest Freightways, Inc., the parties in order to shorten the length of the trial on the question of damages, entered into a stipulation approved by the Court, which is attached hereto, made a part of this opinion, and treated as if inserted in the opinion at this point.
Thereafter, on August 26, 1974, the attorneys for the employer-plaintiffs, wrote a letter to the Court, enclosing a copy of a letter written as of that date, to the attorney for the defendant with respect to the stipulation and the exhibits to be filed with the Court, as set out in the stipulation. The Court had this letter and attachments marked Exhibit 51. The letter to the attorney for the defendant, among other things, sets out that no exhibits for Byers Transportation Company, Inc., Transconlines, Inc., and J. W. Ward Transfer Company, Inc., will be filed with the Court, as was provided in the stipulation, and that these three said employer-plaintiffs insofar as damages are concerned will be omitted from the list of exhibits set forth in the stipulation on page 4, and they will be included in the list of employer-plaintiffs under subparagraph 3(c) on page 6 of the stipulation as employer-plaintiffs as to each of which the Court may enter an award of $1.00 nominal damages.
Thereafter, on August 30, 1974, in accordance with the provisions of the stipulation, the attorneys for the employer-plaintiffs filed with the Court the exhibits with respect to the other employer-plaintiffs listed on page 4 of the stipulation in three envelope folders marked I, II and III. Upon the filing of said exhibits in the envelope folders, the Court had the clerk's office mark *217 the employer-plaintiffs' exhibits as follows:

 Employer-Plaintiffs Exhibit
Anderson Motor Service, Inc. 4
Arkansas-Best Freight System, Inc. 5
Be-Mac Transport Company, Inc. 6
Bonnifeld Bros. Truck Lines, Inc. 7
Burggrabe Truck Lines, Inc. 8
Buske Lines, Inc. 9
Campbell "66" Express, Inc. 10
Centralia Cartage Company, Inc. 11
Churchill Truck Lines, Inc. 12
C. W. Transport, Inc. 13
Dodds Truck Line, Inc. 14
Dohrn Transfer Company 15
East Texas Motor Freight Lines, Inc. 16
 (includes plaintiff Lee American
 Freight System which has merged
 with East Texas Motor Freight
 Lines, Inc.)
Eastern Express, Inc. 17
Eazor Express, Inc. 18
Frisco Transportation Company 19
Hannibal-Quincy Truck Lines, Inc. 20
Hennis Freight Lines, Inc. 21
IML Freight, Inc. 22
Illinois Motor Express, Inc. 23
Interstate Motor Freight System 24
Jones Truck Lines, Inc. 25
Lee Way Motor Freight, Inc. 26
Lovelace Truck Service, Inc. 27
McBride's Express, Inc. 28
Michigan Express, Inc. 29
Midland Truck Lines, Inc. 30
Morrison Motor Freight, Inc. 31
Navajo Freight Lines, Inc. 32
Ohley Transfer Company 33
Orscheln Brothers Truck Lines, Inc. 34
Pic-Walsh Freight Co. 35
Red Arrow Corporation 36
Ryder Truck Lines, Inc. 37
Smith Transfer Corporation 38
Southwestern Transportation Company 39
Strickland Transportation Company 40
Superior Forwarding Co., Inc. 41
T.I.M.E. Freight, Inc. 42
Tennessee-Carolina Transportation, Inc. 43
Terminal Transport Company, Inc. 44
Texas Oklahoma Express, Inc. 45
Tucker, L. A. Truck Lines, Inc. 46
Western Gillette, Inc. 47
Western Trucking Company, Inc. 48
Trans American Freight Lines, Inc. 49
Killion Motor Express, Inc. 50

Exhibits Nos. 4 to 19, inclusive, are in Envelope Folder I, Exhibits Nos. 20 to 37, inclusive, are in Envelope Folder II, and Exhibits 38 to 50, inclusive, are in Envelope Folder III.
Employer-Plaintiffs' Exhibits 4 to 48, inclusive, as well as 1, 2 and 3, were prepared by Shelton. Employer-Plaintiff's Exhibit 49 was prepared by J. G. Murphy, Comptroller of Trans American Freight Lines, Inc., and Employer-Plaintiff's Exhibit 50 was prepared for Bernard O. Killion, President of Killion Motor Express, Inc., for the purpose of his testimony had he testified in court, the latter two exhibits having been fully covered by the stipulation.
After considering the testimony before the Court, the stipulation of the parties and the exhibits which are a part of the record, it is the judgment of the Court that the remaining employer-plaintiffs are entitled to judgment against the defendant in the following amounts:

Gordon Transports, Inc. 151,635.00
Middlewest Freightways, Inc. 196,118.00
Anderson Motor Service, Inc. 123,830.00
Arkansas-Best Freight System, Inc. 183,448.28
Be-Mac Transport Company, Inc. 204,754.00
Bonnifeld Bros. Truck Lines, Inc. 53,554.00
Burggrabe Truck Lines, Inc. 21,326.00
Buske Lines, Inc. 30,618.00
Campbell "66" Express, Inc. 238,064.41
Centralia Cartage Company, Inc. 66,644.00
Churchill Truck Lines, Inc. 110,349.00
C. W. Transport, Inc. 78,003.00
Dodds Truck Line, Inc. 53,243.00
Dohrn Transfer Company 145,087.39
East Texas Motor Freight Lines 487,979.00
Eastern Express, Inc. 262,600.00
Eazor Express, Inc. 17,045.00
Frisco Transportation Company 46,369.00
Hannibal-Quincy Truck Lines, Inc. 48,689.00
Hennis Freight Lines, Inc. 65,991.47
IML Freight, Inc. 141,291.00
Illinois Motor Express, Inc. 15,026.00
Interstate Motor Freight System 358,619.00
Jones Truck Lines, Inc. 104,426.00
Lee Way Motor Freight, Inc. 282,880.00
Lovelace Truck Service, Inc. 142,429.89
McBride's Express, Inc. 65,632.18
Michigan Express, Inc. 53,788.00
Midland Truck Lines, Inc. 57,977.00
Morrison Motor Freight, Inc. 106,646.00
Navajo Freight Lines, Inc. 153,550.00
Ohley Transfer Company 8,559.56
Orscheln Brothers Truck Line, Inc. 135,692.00
Pic-Walsh Freight Co. 91,177.00
Red Arrow Corporation 28,211.00
Ryder Truck Lines, Inc. 43,914.00
Smith Transfer Corporation 71,836.00
Southwestern Transportation Company 80,693.00
Strickland Transportation Company 277,875.00
Superior Forwarding Co., Inc. 181,548.00
T.I.M.E. Freight, Inc. 115,101.00
Tennessee-Carolina Transportation 120,441.00
Terminal Transport Company, Inc. 120,550.00
Texas Oklahoma Express, Inc. 49,332.00
Tucker, L. A. Truck Lines, Inc. 94,932.00
Western Gillette, Inc. 49,288.00
Western Trucking Company, Inc. 195,104.00
Trans American Freight Lines, Inc. 39,828.00
Killion Motor Express, Inc. 24,637.00
Associated Transport, Inc. 1.00
Bellm Freight Lines, Inc. 1.00
Bruce Motor Freight, Inc. 1.00
Harper Truck Service, Inc. 1.00
Motor Freight Corporation 1.00
Robertson Motor Freight, Inc. 1.00
Toedebusch Transfer, Inc. 1.00
Byers Transports Co., Inc. 1.00
Transcon Lines, Inc. 1.00
J. W. Ward Transfer Co., Inc. 1.00

*218 This memorandum opinion and the attached stipulation is adopted by the Court as its findings of fact and the memorandum opinion as its conclusions of law.
The clerk of the Court will prepare and enter the proper judgment finding for the remaining sixty employer-plaintiffs in the amounts hereinabove set out.