**MOTOR CARRIERS COUNCIL OF ST. LOUIS, INC., a corporation, et al., Appellees,**

v.

**LOCAL UNION NO. 600, Affiliate of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Appellant.**

No. 74–1869.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1975.

Decided May 8, 1975.

---

** The Daneker Clock Co., 211 NLRB No. 108 (1974).

Stephen H. Gilmore, St. Louis, Mo., for appellant.

Charles Alan Seigel, St. Louis, Mo., for appellees.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

PER CURIAM.

Teamsters Local 600 of St. Louis appeals from a district court judgment which awarded damages in excess of $5 million against it and in favor of the various trucking firm members of the Motor Carriers Council of St. Louis. The district court's memorandum opinion is reported at 384 F.Supp. 214 (E.D.Mo. 1974).

This litigation had its origin in a work stoppage which occurred at the truckers' St. Louis terminals during April and May, 1970. The council brought an action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to recover damages resulting from breach of a "no strike" clause in the collective bargaining agreement between its members and the union. The court separated the issue of liability from the issue of damages and, after a trial, found that the union had breached the contract and was liable. Motor Carriers Council v. Teamsters Local 600, 370 F.Supp. 461, 465 (E.D.Mo.1972). An interlocutory appeal was taken by the union, and this Court affirmed the judgment. Motor Carriers Council v. Teamsters Local 600, 486 F.2d 650, 654 (8th Cir. 1973). The district judge then held a trial limited to the question of damages.

The council put on as an expert witness one Carroll Shelton, a certified public accountant who is highly regarded in the St. Louis area. Mr. Shelton has prepared many business interruption claims in the past, and he testified that the procedures he utilized in this case accorded with standard accounting practices. The council also introduced exhibits prepared by Mr. Shelton which showed exactly how the loss occasioned by the strike had been computed for each trucking firm.

The basic theory utilized by the witness in computing the damages was that a work stoppage at one of a carrier's terminals affects that carrier's entire freight system adversely. Therefore, the loss from the illegal strike had to be figured on a system-wide basis. Reduced to a very simple description, the damages attributable to the walkout were ascertained by subtracting the amount of revenue a carrier actually took in during that time from the amount it probably would have realized for that period had the strike not occurred. Of course, the witness also deducted from the amount chargeable to the strike the amount of loss fairly chargeable to any other cause, including work stoppages at other cities.

It was stipulated that the figures used and computations made by Mr. Shelton were correct. The union did not challenge the witness' standing as an expert nor did it offer any evidence of its own. It presented no alternatives to the theories and formulas utilized by the expert. In short, the union as much as conceded that the damages, as computed by Mr. Shelton, were proper under the princi-

ples utilized by him; and it offered no evidence to rebut those principles.

In this situation the district judge had no viable alternative to awarding the damages computed by the council's witness. The striking teamsters local certainly must have foreseen that the work stoppage would disrupt the carriers' entire systems. And the witness' basic theory in determining the resulting loss appears fair and equitable—especially since there is no evidence pointing to a contrary conclusion.

The judgment is affirmed.