**HIGHWAY & CITY FREIGHT DRIVERS, DOCKMEN AND HELPERS, LOCAL UNION NO. 600, a voluntary unincorporated labor organization, Appellant,**

v.

**GORDON TRANSPORTS, INC., et al., Appellees.**

No. 77–1542.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1977.

Decided May 19, 1978.

Rehearing and Rehearing En Banc Denied June 20, 1978.

Stephen H. Gilmore, St. Louis, Mo., argued, Joseph B. Dickerson, Jr. and Robert A. Crowe, St. Louis, Mo., on briefs, for appellant.

Charles A. Seigel, St. Louis, Mo., argued, Hyman G. Stein, Charles H. Spoehrer and Ned O. Lemkemeier, St. Louis, Mo., on brief, for appellees.

Before LAY and BRIGHT, Circuit Judges, and SCHATZ,* District Judge.

LAY, Circuit Judge.

In this case we are asked to decide whether a labor union is a "person" who may file a petition for voluntary bankruptcy under § 4(a) of the Bankruptcy Act, 11 U.S.C. § 22(a). In 1970 Highway and City Freight Drivers, Dockmen and Helpers Local Union No. 600 (hereinafter the Union) engaged in an unlawful strike which resulted in a judgment of approximately six million dollars against it, and in favor of more than 60 motor freight carrier companies. *See Motor Carriers Council of St. Louis, Inc. v. Local Union No. 600*, 370 F.Supp. 461 (E.D.Mo.1972), *aff'd*, 486 F.2d 650 (8th Cir. 1973) (liability); *Motor Carri-*

---

* Albert G. Schatz, United States District Judge, District of Nebraska, sitting by designation.

ers Council of St. Louis, Inc. v. Local Union No. 600, 384 F.Supp. 214 (E.D.Mo.1974), aff'd, 516 F.2d 316 (8th Cir. 1975) (damages).

After filing its voluntary petition the Union was automatically adjudged a bankrupt pursuant to § 18(f) of the Act, 11 U.S.C. § 41(f). Gordon Transports, Incorporated, and 59 other motor carrier companies (the motor carriers) then sought to have the adjudication vacated and the petition dismissed on the ground the Union was not a person for purposes of the Bankruptcy Act. The motor carriers also urged that the Union was not a separate entity independent from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the International) and that therefore the bankruptcy proceedings were improper without the joinder of the International. The bankruptcy court, the Honorable Robert E. Brauer presiding, ruled that the Union was an "association" that came within the Act's definition of a corporation and was, therefore, a person who could file a petition for voluntary bankruptcy. On review the district court, the Honorable H. Kenneth Wangelin presiding, found that a labor union is not a "business oriented entit[y] with powers similar to corporations" and thus neither a corporation nor a person under the Act. The district court also ruled that nothing within the legislative history supported the argument that Congress' intention was to include unions within the Act. The order of the bankruptcy judge was reversed and the voluntary petition in bankruptcy was ordered dismissed. In re Highway & City Freight Drivers Local 600, 432 F.Supp. 1326 (E.D.Mo.1977).

█ We vacate the judgment of the district court and hold that the Union is a person under the Bankruptcy Act.

Section 1 of the Act, 11 U.S.C. § 1, provides:

The words and phrases used in this title and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows:

.    .    .    .    .

(23) "Persons" shall include corporations, except where otherwise specified

.   .   . .

The word corporation is also defined in § 1 of the Act.

(8) "Corporation" shall include *all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include* partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint-stock companies, *unincorporated companies and associations,* and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument . . . .

(Emphasis added).

The issue we face is, therefore, whether the Union is an association which has any of the powers and privileges of private corporations not possessed by individuals or partnerships within the meaning of the Act. We conclude that it is.

The present definition of a corporation under the Act has remained substantially unchanged since the 1926 amendments of the Act. See Act of May 27, 1926, § 1(6), 44 Stat. 662. At that time the word association was generally understood to "signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." Hecht v. Malley, 265 U.S. 144, 157, 44 S.Ct. 462, 467, 68 L.Ed. 949 (1924), quoting 1 Abb.Law Dict. 101 (1879). See also In re Poland Union, 77 F.2d 855, 856 (2d Cir. 1935). The Supreme Court had, in fact, recognized that unions "are, as has been abundantly shown, associations existing under the laws of the United States, of the territories thereof, and of the states of the Union." United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 392, 42 S.Ct. 570, 576, 66 L.Ed. 975 (1922).[1]

---

1. A 1927 article on the 1926 amendments to the Bankruptcy Act cited a then contemporary

work on associations in which trade unions were listed as one of several entities which

██ It is also evident that under federal law [2] the Union, as an association, has powers and privileges of a private corporation not held by an individual or a partnership. In *Coronado Coal* the Supreme Court held that unincorporated labor unions such as the United Mine Workers were distinct entities suable in federal court. In reaching this result the Court noted that:

Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. . . . They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards.

*Id.* at 385–86, 42 S.Ct. at 574 (citations omitted).[3]

Later, in *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), the Court elaborated on the characteristics of a labor union.

Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. . . . The union's existence in fact, and for some purposes in law, is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws which, in controversies between member and union, are often enforced by the courts. The union engages in a multitude of business and other official concerted activities, none of which can be said to be the private under-

---

were commonly thought of as associations. McLaughlin, *Amendment of the Bankruptcy Act*, 40 Harv.L.Rev. 341, 361 (1927).

**2.** The motor carriers urge that the state law of Missouri should be looked to in answering this question. We must disagree. Federal law clearly controls the interpretation of federal statutes. *See, e. g., Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 471–72, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 68 L.Ed. 533 (1924); J. Moore, Moore's Manual § 4.21 (rev. ed. 1977). Some areas of the Bankruptcy Act find convenient reference to state law. This "state classification test," *see First Am. Bank & Trust Co. v. George*, 540 F.2d 343, 346–47 (8th Cir.), *appeal dismissed*, 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976), has often been used in determining whether an entity falls within one of the exceptions to the inclusive provisions of § 4(a). *See Sims v. Fidelity Assurance Ass'n*, 129 F.2d 442 (4th Cir. 1942), *aff'd*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). State law has been found particularly appropriate with respect to the exceptions to § 4(a) since the enumerated entities are typically highly regulated by the states and since the states are responsible for the liquidation of the

excepted entities. *See id.* at 448–51; *In re Union Guar. & Mortgage Co.*, 75 F.2d 984, 985 (2d Cir.), *cert. denied*, 296 U.S. 594, 56 S.Ct. 142, 80 L.Ed. 421 (1935).

When dealing with many sections of the Bankruptcy Act, the "desirability of a uniform rule is plain." *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (question of what law should govern the issuance of commercial paper). The eligibility of a union for voluntary bankruptcy cannot depend upon the state in which it happens to be located. As Judge Brauer reasoned:

It would assuredly be anomolous [*sic*] to permit the filing of a voluntary petition in bankruptcy by a labor organization situated in some one of those states, but deny that filing to one situated in Missouri simply because of Missouri's adherence to old common law concepts . . . , an attitude said to be sorely in need of change to further justice to both suers and the sued.

**3.** The Supreme Court also observed that "[n]o organized corporation has greater unity of action [than the union], and in none is more power centered in the governing executive bodies." *United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 385, 42 S.Ct. 570, 574, 66 L.Ed. 975 (1922).

takings of the members. Duly elected union officers have no authority to do or sanction anything other than that which the union may lawfully do; nor have they authority to act for the members in matters affecting only the individual rights of such members. The union owns separate real and personal property, even though the title may nominally be in the names of its members or trustees.

*Id.* at 701–02, 64 S.Ct. at 1252 (footnote omitted).[4]

Thus, under federal law, a union undeniably possesses some of the unique powers or privileges of a private corporation.

■ Basic principles of statutory construction lend support to a broad construction of the definition of a corporation under § 1(8) of the Act. Section 1(8) uses the word "includes" when setting out the types of organizations that come within the definition rather than the word "means."[5] When a statute is phrased in this manner, the fact that the statute does not specifically mention a particular entity (in this case labor unions) does not imply that the entity falls outside of the definition. *See Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 587–88, 54 L.Ed.2d 563 (1978); *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 79 L.Ed. 232 (1934).

Furthermore, a union is not excluded by the literal language of § 4(a) from filing a voluntary petition in bankruptcy. The section provides that any "person" *except* municipal, railroad, insurance, and banking corporations and building and loan associations are entitled to the benefits of voluntary bankruptcy.[6] In interpreting § 4(a) the Second Circuit noted:

When the words create a general inclusionary category there is *greater reason,* perhaps, to accept a literal meaning in the absence of any particular purpose which contradicts it. When the statute is couched in terms of an exception, however, the task is somewhat different, for in the case of an exception we can hardly assume that excluding a particular category from a general class was utterly without purpose. If we find that there was a legislative purpose for the general exception which *does* not fit the narrower exception at issue, a court may justifiably conclude that the exception at issue is *without* the statute. Thus, the normal rule of construction is that where words of exception are used, they are to be strictly construed to limit the exception.

*Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp.*, 536 F.2d 509, 512–13 (2d Cir.), *cert. denied*, 429 U.S. 978, 97 S.Ct. 486, (1976).[7]

4. Union members, like shareholders of a private corporation, are granted limited liability by § 301(b) of the National Labor Relations Act, 29 U.S.C. § 185(b). Subsection (b) of 29 U.S.C. § 185 provides in part:

Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

5. The 1926 amendments to the Act used the word "means" in defining corporations. *See* Act of May 27, 1926, § 1(6), 44 Stat. 662. The word "includes" was substituted in the 1938 amendments to the Act. *See* Act of June 22, 1938, § 1(8), 52 Stat. 840.

6. The reasons for excluding the specific entities listed in § 4(a) were described by Congressman Sherley:

There has been excepted out of the law *always* certain corporations—for instance, municipal, railroad, insurance, or banking

corporations—on the theory that all of those corporations partook either of a public or quasi-public nature that did not warrant their estates being adjudicated through bankruptcy proceedings, and that it was wiser to hold them exempt from the law than to permit them to be thrown into bankruptcy by either voluntary or involuntary proceedings. This amendment does not, in that particular, change the law at all.

*Hearings on H.R. 18694 Before Subcomm. No. 1 of the House Comm. on the Judiciary*, 60th Cong., 2d Sess. (1909), *quoted in Israel-British Bank (London) Ltd. v. Federal Deposit Ins. Corp.*, 536 F.2d 509, 514 (2d Cir.), *cert. denied*, 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976).

7. In *Israel*, the Second Circuit found that a foreign banking corporation was not a banking corporation for purposes of § 4(a) and permitted the foreign bank to file for voluntary bankruptcy. *Israel-British Bank (London) Ltd. v. Federal Deposit Ins. Corp., supra* at 514.

Contrary to the district court, we find the bankruptcy court's interpretation of the Act is also supported by its legislative history. In its 1898 formulation a corporation was defined as meaning "all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships, and shall include limited or other partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association . . . ." Act of July 1, 1898, § 1(6), 30 Stat. 544.[8]

The 1926 amendment of the definition of a corporation was primarily designed to bring so-called Massachusetts Trusts, or common law business trusts, within the definition of corporation. *See* H.R.Rep.No.877, 69th Cong., 1st Sess. 6 (1926). That effort, however, was not the only purpose of the legislation. Congressman Michener stated that:

> The Principal changes are:
>
> (1) The meaning of the term "corporations" is broadened so to *include* common-law trusts, and so forth.

67 Cong.Rec. 7675 (1926) (emphasis added). *See also* McLaughlin, *Amendment of the Bankruptcy Act*, 40 Harv.L.Rev. 341, 355–56 (1927).

Collier views the 1926 amendments as

"meant to enlarge the statutory meaning of 'corporation' beyond its ordinary meaning" and [calling] for "a broad, inclusive construction of the language used". The five comprehensive classes of bodies, groups and businesses enumerated in the clause cover practically the whole range of private activities and enterprises, except those carried on by individuals as such and partnerships other than the specified type.

1 Collier on Bankruptcy ¶ 1.08, at 62 (14th ed. 1974) (footnotes omitted)[9].

We also note that the Act of June 22, 1938, 52 Stat. 840, struck out a reference to unincorporated companies in the partnership provisions of the bankruptcy statute. *See* 1 Remington on Bankruptcy § 92, at 161 (5th ed. 1950). Professor Remington noted that the result of the change was that:

> The approach now is similar to that of the Federal income tax provisions, under which syndicates, associations and enterprises having all the essential attributes of corporations are treated as if they were corporations; otherwise, as partnerships.

*Id.* at 161–62.

Thus, it appears that Congress meant to create a clear dichotomy between corporations and partnerships.

---

8. Even under this more restrictive definition the meaning of a corporation was given a broad interpretation enabling entities which were not typical business enterprises to file for voluntary bankruptcy. In allowing an Odd Fellows lodge to file for bankruptcy a New York judge wrote:

> The bankruptcy law has prescribed what "bodies" or associations of persons shall be deemed a corporation within its meaning, and this law is paramount. That an association of a considerable number of men under a common name, with a constitution and by-laws, and with power to elect governing trustees, and recognized by the statutes of the state as a single body or "entity," and given power to own real and personal property and sue and be sued, and act by its trustees duly elected as a single body, is a *body* having some of the powers and privileges of private corporations not possessed by individuals or partnerships, cannot be doubted.

*In re Carthage Lodge, No. 365, I.O.O.F.*, 230 F. 694, 701 (N.D.N.Y.1916). *See also In re Sar-*

gent Lumber Co., 287 F. 154 (E.D.Ark.1923); 1 Collier on Bankruptcy ¶ 4.06 (14th ed. 1974).

9. As pointed out by the district court, one court has held that the word association does not add anything to the phrase unincorporated company in § 1(8). *Pope & Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132, 136 (1st Cir. 1941). However, a commentator writing at the time the amendments were passed, observed:

> [I]t [the amended § 1(6)] says that "unincorporated associations" are corporations. This last term must be rejected as surplusage or else given a wider effect than the term "unincorporated company," because the courts, in trying to decide what is an unincorporated company within the meaning of Section 4(b), have referred to unincorporated associations as a generic term, and have examined the question as to which of such associations were intended by the phrase unincorporated company.

*McLaughlin, supra* at 361.

This overall history lends support to the position that Congress recognized that the 1926 amendments were intended to give additional breadth to the meaning of the term corporation. Clearly the Union is not liable as a partnership. There being no express history to indicate that it was to be excluded, we hold that the Act includes the Union as an unincorporated association.

■ The district court's emphasis that the Union does not qualify for voluntary bankruptcy since it is not a business enterprise organized for profit is not relevant to a voluntary petition for bankruptcy under § 4(a). Under § 4(b) only a "money, business or commercial corporation" may be forced into involuntary bankruptcy. Section 4(a) is not similarly limited. *See* 1 Collier, *supra* ¶ 4.05[1], at 585. We recognize that dicta within *Associated Cemetery Management, Inc. v. Barnes*, 268 F.2d 97 (8th Cir. 1959), provides some support for the motor carriers' argument that only business oriented entities may file for voluntary bankruptcy. However, the clear language of the Act sets forth different standards for voluntary and involuntary bankruptcy. This fact was recognized by the court in the *Associated Cemetery* case when it observed:

We recognize the distinction that exists between voluntary and involuntary proceedings in bankruptcy. By the explicit provisions of Section 4, sub. b (Title 11 U.S.C.A. § 22, sub. b), involuntary proceedings are limited to "natural persons (except a wage earner or farmer) and any moneyed, business or commercial corporation", with certain exceptions—whereas, "any person" (with certain exceptions), which, as we have seen, encompasses corporations, may be declared a voluntary bankrupt. Section 4, sub. a (Title 11 U.S.

C.A. § 22, sub. a). Thus it is manifest that while any person or entity subject to involuntary bankruptcy may be adjudicated a voluntary bankrupt, the reverse is not necessarily true.

*Id.* at 104.

We now hold that the fact that an entity was not a "moneyed, business or commercial corporation" cannot be a controlling factor under § 4(a). The few cases which have passed on this question indicate that § 4(a) is not so limited. *See, e. g., In re Allen University*, 497 F.2d 346, 348 (4th Cir. 1974); *In re Philadelphia Consistory Sublime Princes Royal Secret 32° Ancient Accepted Scottish Rite*, 40 F.Supp. 645, 648 (E.D.Pa.1941); *In re Michigan Sanitarium & Benevolent Association*, 20 F.Supp. 979, 985 (E.D.Mich.1937), *appeal dismissed*, 96 F.2d 1019 (6th Cir. 1938); *In re Elmsford Country Club*, 50 F.2d 238, 239 (S.D.N.Y. 1931). Collier agrees.

Subdivision *b* [of § 4] specifically states what classes of corporations are included within its terms. As the definition of "corporation" in § 1(8) is broad enough to include many unincorporated bodies, the confusing language "unincorporated company" employed in the former Act has been omitted. Charitable and even eleemosynary unincorporated groups, though within the definition of "corporation", are not subject, however, to involuntary bankruptcy under the terms of the subdivision, since they are not moneyed, business or commercial corporations.

1 Collier, *supra* ¶ 4.14, at 611 (footnotes omitted).

■ The motor carriers urge that policy reasons militate against the inclusion of the Union within § 4(a) of the Bankruptcy Act. Judge Brauer rejected this argument.[10]

---

10. Judge Brauer cogently observed:

Movants argue, however, that the *spirit* of the Act militates against inclusion of such an organization within its meaning, arguing that Section 301 of the Labor Relations Act, 1947, supra, was enacted to insure labor and industrial peace and harmony and stability; that to permit bankruptcy and a discharge in bankruptcy of a debt, based upon, for example, damages arising from a breach of a collective

bargaining agreement, is inimical to that peace and harmony and stability. The argument presumes that, if bankruptcy may be availed of, a labor organization would be wont to break its collective bargaining agreement(s) with impunity, comforted in the knowledge that a bankruptcy discharge would relieve it from the full consequences of the breach.

I have serious doubts that a labor organization, any more than any other party to a con-

**1292**

The district court did not address these considerations. We find the policy-based arguments unavailing here. Unless some *overriding* principle of public policy is shown to exist which demonstrates that the legislative purpose of the Act would be circumvented by our interpretation of the Act, these arguments are not germane to the court's statutory interpretation. We are aware of none here. Arguments addressed to the wisdom of a policy which would exclude unions from the Act are better made to Congress so a specific exemption could be created if so desired.

■ Finally, the carriers urge that the local union cannot be viewed as a separate entity from the International. The weakness of the motor carriers' position is pointed out by the fact that they sued only the local union and have not previously sought to bind the International under the judgment by reason of respondeat superior or on some alter ego theory. We find little merit to the argument that the International, and the local are not sufficiently distinct entities under the Bankruptcy Act; we hold the local has an adequately autonomous legal existence to allow it to file separately under § 4(a). The voluntary petition and the consequent adjudication do not prejudice the motor carriers' rights to seek relief against the international union on the basis of the theories noted above.[11]

Since, as we have found, the Union is a person within the meaning of the Act, the

bankruptcy judge properly rejected the motor carriers' motion to set aside the adjudication of bankruptcy. Accordingly, the district court's order setting aside the adjudication is vacated and the bankruptcy petition is ordered reinstated.

tract (i. e., an individual, or a private corporation, as any of the movants, who may concededly file a voluntary petition in bankruptcy), will behave any more irresponsibly in respect of its duties, obligations and liabilities to third persons simply because bankruptcy may provide some relief against the full consequences of such behavior. Experience has not demonstrated, generally, that the availability of bankruptcy relief has been an important, decisive factor in the course of conduct of one's ordinary human and business affairs with another.

Further, the Bankruptcy Act itself penalizes certain conduct, by provisions for the denial of a bankruptcy discharge generally, and by provisions for the non-dischargeability of debts. Sections 14, and 17, of the Bankruptcy Act, 11 U.S.C. 32, and 35. These provisions would seem to me to deter bad faith breaches of collective bargaining agreements if the haven of the Bankruptcy Act was thought to shield a

labor organization from the results of that bad faith. And, even of more importance: if the availability of bankruptcy to a labor organization were shown to create strife and unrest and discord, Congress can easily and quickly exclude, by specific provision in the Act, the availability of bankruptcy to a labor organization, as it has already done to various entities by Section 4 of the Act, supra.

11. The motor carriers imply that the local cannot be a bankrupt since, by reason of its relationship with the International, it is not insolvent. This contention is erroneous. A petitioner filing a voluntary petition need not be insolvent to allow its creditors to divide its assets. *In re Fox West Coast Theatres*, 88 F.2d 212, 217–18 (9th Cir.), *cert. denied*, 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363 (1937); *In re Foster Paint & Varnish Co.*, 210 F. 652, 653 (E.D.Pa.1914); 1 Collier, *supra* ¶ 4.03, at 579.