Aleksander KANTOR,
Plaintiff-Appellant,

v.

WELLESLEY GALLERIES, LTD., a foreign corporation; Ford Motor Company, a Delaware corporation; BKM Corporation, a California corporation, dba Budget Rent-A-Truck of Southern California, Defendants-Appellees.

No. 82–5121.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1982.

Decided April 26, 1983.

David Jaroslawicz, Van Nuys, Cal., for plaintiff-appellant.

Bonnie Bass, Murchison & Cumming, Los Angeles, Cal., for defendants-appellees.

Before SNEED, SKOPIL, and BOO-CHEVER, Circuit Judges.

SNEED, Circuit Judge:

This appeal poses the question whether a "stateless alien" who is domiciled in one of the several states can sue or be sued in federal court pursuant to diversity of citizenship jurisdiction as enacted in 28 U.S.C. § 1332(a)(1). Appellant filed a state law tort action in federal court alleging diversity of citizenship. Appellant is domiciled in New York but he is neither a citizen of the United States nor of any other country. The district court dismissed the complaint, concluding that because appellant is not a citizen of the United States he cannot be a "citizen of a State" as that phrase is used in 28 U.S.C. § 1332(a)(1), and thus that subject matter jurisdiction does not exist. We affirm.

I.

FACTS

On March 7, 1980, appellant was involved in an automobile accident in San Jose, California. He filed suit in the United States District Court for the Central District of California alleging that the accident was caused by a defect in the vehicle that he was driving. Appellant based jurisdiction upon 28 U.S.C. § 1332(a)(1), stating that he

is a citizen of the State of New York and that defendants are citizens of other states.

Appellant has been domiciled in New York since he left his native Soviet Union in 1977. He is not a United States citizen, however. Nor is he a Soviet citizen because the Soviet government revoked his citizenship when he left the Soviet Union. Appellees contend that as a "stateless alien" appellant is precluded from suing or being sued under the diversity jurisdiction of the federal courts. The district court agreed and dismissed appellant's complaint.

## II.

### DISCUSSION

■ Federal district courts are vested with original jurisdiction over matters in controversy between "citizens of different States." 28 U.S.C. § 1332(a)(1). Thus, the sole issue on this appeal is whether or not appellant is a citizen of New York for the purpose of establishing diversity of citizenship. The determination of a litigant's state citizenship for purposes of section 1332(a)(1) is controlled by federal common law, not by the law of any state. *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir.1973); *Ziady v. Curley,* 396 F.2d 873, 874 (4th Cir. 1968).

■ To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state. *See, e.g., Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th Cir.1980); *Fahrner v. Gentzsch,* 355 F.Supp. 349, 353 (E.D.Pa.1972); 1 Moore's Federal Practice ¶ 0.74[2.–1], at 707.20 (2d ed. 1982); H. Hart & H. Wechsler, The Federal Courts and the Federal System 1062 (2d ed. 1973). Appellant concedes that he fails to meet the first prong of this test of state citizenship. He would have us reject the two-part test, however, and equate domicile in New York with New York citizenship for purposes of section 1332(a)(1). We cannot accede.

The two-part test for state citizenship derives from early decisions of the United States Supreme Court. Most notably, in

*Brown v. Keene,* 33 U.S. (8 Pet.) 112, 8 L.Ed. 885 (1834), the Supreme Court dismissed plaintiff's diversity action because diversity of citizenship was not adequately pleaded. Plaintiff had failed to allege both elements of the test of state citizenship. Though the petition stated that defendant was domiciled in Louisiana this was not a positive declaration that defendant was a *citizen* of Louisiana:

> A citizen of the United States may become a citizen of that State in which he has a fixed and permanent domicile; but the petition does not aver that the plaintiff is a citizen of the United States.

*Id.* at 115; *cf. Scott v. Sandford,* 60 U.S. (19 How.) 393, 405, 15 L.Ed. 691 (1857) (Though a state may confer state citizenship on any alien he "would not be a citizen in the sense in which that word is used in the Constitution of the United States, nor entitled to sue as such in one of its courts.").

■ The Supreme Court reaffirmed the holding of *Brown v. Keene* following the passage of the Fourteenth Amendment. *E.g., Sun Printing & Publishing Association v. Edwards,* 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027 (1904); *Anderson v. Watt,* 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891). The Fourteenth Amendment "declares all citizens of the United States to be citizens 'of the state where they reside.'" *Anderson v. Watt,* 138 U.S. at 702, 11 S.Ct. at 451. "[I]t broadened the national scope of the Government under the Constitution by causing citizenship of the United States to be paramount and dominant instead of being subordinate and derivative . . . ." *Colgate v. Harvey,* 296 U.S. 404, 427–28, 56 S.Ct. 252, 257–258, 80 L.Ed. 299 (1935), *overruled on other grounds, Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). Within the definition of the Fourteenth Amendment, "[a] foreign-born resident, who has not been naturalized according to the acts of congress, is not a 'citizen' of the United States or of a state." *City of Minneapolis v. Reum,* 56 F. 576, 581 (8th Cir.1893).

Relying on this Supreme Court authority, circuit and district courts have treated the

question before us today as one long decided: "[I]n order to be a citizen of a state, it is elementary law that one must first be a citizen of the United States." *Factor v. Pennington Press, Inc.,* 230 F.Supp. 906, 909 (N.D.Ill.1963); *see, e.g., Sadat v. Mertes,* 615 F.2d at 1180; *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Delaware, L. & W.R. Co. v. Petrowsky,* 250 F. 554, 557 (2d Cir.), *cert. denied,* 247 U.S. 508, 38 S.Ct. 427, 62 L.Ed. 1241 (1918); *Avins v. Hannum,* 497 F.Supp. 930, 936 (E.D.Pa. 1980); *Kaufman & Broad, Inc. v. Gootrad,* 397 F.Supp. 1054, 1055 (S.D.N.Y.1975); *Fahrner v. Gentzsch,* 355 F.Supp. at 353; *Codagnone v. Perrin,* 351 F.Supp. 1126, 1129 (D.R.I.1972).

■ Appellant presents three arguments in his attempt to circumvent the two-part test of state citizenship. First, he points out that there is a clear distinction between being a citizen of the United States and being a citizen of a state. Since section 1332(a)(1) speaks only in terms of state citizenship, appellant reasons that only state citizenship and not United States citizenship is required for diversity jurisdiction to lie. This argument, a "plain meaning" approach, fails. While it is true that the only question before us is whether appellant is a citizen of New York, that inquiry is necessary only for the purpose of determining whether diversity jurisdiction exists under federal law. State law cannot supply the answer. *Ziady v. Curley,* 396 F.2d at 874. And, as stated above, the federal law is that United States citizenship is a prerequisite of state citizenship.

■ Second, appellant argues that the rule that United States citizenship is a necessary element of state citizenship for diversity purposes has been stated only as dicta. It is true that in many of the decisions cited above the second element of the state citizenship test—domicile in the

state—was the critical question. *E.g., Avins v. Hannum,* 497 F.Supp. at 936 ("Since there is no dispute as to plaintiff's status as a United States citizen, the court need only address the issue of plaintiff's ... [domicile]."). United States citizenship is rarely in issue in diversity cases because 28 U.S.C. § 1332(a)(2), the so-called alienage jurisdiction section, provides an alternative basis of federal jurisdiction for cases involving non-United States citizens who are citizens or subjects of a foreign state. However, this infrequency of application does not invalidate the two-part test of state citizenship nor entitle us to ignore the long accepted Supreme Court authority. Absent contrary authority or legislative amendment we should continue to dismiss suits brought pursuant to section 1332(a)(1) unless both elements of the test of state citizenship are met.

Finally, as evidence of recent contrary authority, appellant cites *Blanco v. Pan-American Life Insurance Co.,* 221 F.Supp. 219 (S.D.Fla.1963), *rev'd in part on other grounds,* 362 F.2d 167 (5th Cir.1966). The district court in *Blanco* upheld diversity jurisdiction where plaintiffs were Cuban refugees, domiciled in Florida, who had renounced their Cuban citizenship. Thus, appellant argues that courts in the Fifth Circuit have rejected the two-part test of state citizenship. *Blanco* is distinguishable, however. The central issue in *Blanco* was not jurisdiction, but application of the Act of State doctrine and whether the plaintiffs' status as Cuban nationals subjected them in personam to the sovereignty of the State of Cuba. *Id.* at 227. The district court merely stated that the case was brought under diversity of citizenship jurisdiction without discussing or deciding whether diversity existed pursuant to section 1332(a)(1) (state citizenship diversity), or section 1332(a)(2) (alienage jurisdiction). *Id.* at 221. The latter is a distinct possibility.[1] However,

1. International law treats differently those stateless persons whose citizenship has been revoked, "stateless persons *de jure,*" and those who have become refugees by leaving the country of their nationality and renouncing allegiance to that state, "stateless persons *de facto.*" 8 M. Whiteman, Digest of International Law 84–85 (1967). Unlike appellant in this case, the plaintiffs in *Blanco* were of the latter group. As *de facto* stateless aliens plaintiffs

whether a unilateral renunciation of one's foreign citizenship alone should deprive the alien of alienage jurisdiction under section 1332(a)(2) is an issue we need not decide. In this case it is clear that appellant is "stateless." Federal courts are without authority to hear suits having as their jurisdictional basis the alienage of a person who has no nationality. *Sadat v. Mertes,* 615 F.2d at 1183; *Shoemaker v. Malaxa,* 241 F.2d 129 (2d Cir.1957); *Blair Holdings Corp. v. Rubinstein,* 133 F.Supp. 496 (S.D.N.Y. 1955). In any event, without an explicit holding that plaintiffs were citizens of Florida for diversity purposes we cannot say that *Blanco* supports appellant's contention. And even such a holding would not be binding on this court.

■ Our position conforms to the principle that the congressional grant of diversity jurisdiction is to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). To find jurisdiction in this case would require that we reject a rule that, while applied only infrequently, has been accepted for 150 years. This we decline to do. The appropriate forum for appellant's complaint is state court.

The order of the district court dismissing appellant's complaint with prejudice is therefore affirmed.

AFFIRMED.

retained some legal relationship with their native Cuba. *See id.* at 85. Thus, the district court in *Blanco* might have been justified in

finding subject matter jurisdiction on the basis of alienage. 28 U.S.C. § 1332(a)(2).