134 F.3d 377
 RICO Bus.Disp.Guide 9471
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff-Appellee,
v.
Leon B. BROWN, CCP Enterprise, Inc., dba Advanced Data
Products, Inc.; Matthew Cho; Reggie Parrot;
California Computer Designs, Inc.;
Henry Cho, Defendants,
and
Rajeev K. Dhingra, Defendant-Appellant.
 No. 94-56001.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 1, 1997.
Decided Jan. 9, 1998.
 
 Before: HALL, BRUNETTI, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rajeev K. Dhingra (Dhingra), president of California Computer Designs (CCD), appeals the district court's judgment, following a jury trial, in favor of International Business Machines Corporation (IBM) and against Dhingra and CCD for fraud, conversion, and RICO violations. This court has jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.
 
 
 3
 * The jury found that Dhingra violated 18 U.S.C. § 1962(a) (receiving and investing income derived from a pattern of racketeering activity); 18 U.S.C. § 1962(c) (conducting or participating in the affairs of a RICO enterprise); and 18 U.S.C. § 1962(d) (conspiracy to violate § 1962(a) or (c)). Dhingra presents four arguments in support of his contention that the district court abused its discretion by denying his motion for judgment as a matter of law on the RICO claims.
 
 
 4
 * Dhingra first contends that IBM did not produce any evidence to show that he was involved in the management or control of the RICO enterprise as required by 18 U.S.C. § 1962(c). We agree and reverse the district court's denial of Dhingra's motion for judgment as a matter of law on IBM's § 1962(c) claim.
 
 
 5
 Under § 1962(c), it is unlawful for any person to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "In order to 'participate, directly or indirectly in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." Reyes v. Ernst & Young, 507 U.S. 170, 179 (1993). Evidence that the defendant knew of the scheme or even benefitted from the scheme is not enough to impose RICO liability. Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1128 (9th Cir.1997).
 
 
 6
 Viewing the evidence in the light most favorable to IBM and drawing all reasonable inferences, Amarel v. Connell, 102 F.3d 1494, 1521 (9th Cir.1996), there is simply not enough evidence to prove that Dhingra participated in the operation or management of the enterprise. The evidence, that Dhingra received stolen property at below-market prices from Brown and ADP and profitably sold it on the gray market, at most suggests that Dhingra was aware of and benefitted from the enterprise. Accordingly, Dhingra cannot be said to have operated or managed the enterprise in violation of § 1962(c). Neibel, 108 F.3d at 1128. For the same reasons, Dhingra cannot be liable under 18 U.S.C. § 1962(d) based on a conspiracy to violate § 1962(c).
 
 
 7
 While we reverse the district court's denial of Dhingra's motion for judgment as a matter of law as to the § 1962(c) claim, we do not change the outcome of the case because there is a sufficient base in §§ 1962(a) and 1962(d) to sustain the jury verdict.
 
 B
 
 8
 Dhingra next argues that IBM did not introduce evidence to show that Dhingra was part of a RICO enterprise separate and distinct from the racketeering activity. See United States v. Turkette, 452 U.S. 576, 583 (1981); Chang v. Chen, 80 F.3d 1293, 1295 (9th Cir.1996). However, "[t]he participation of a corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure separate from the racketeering activity." Webster v. Omnitriton Int'l. Inc., 79 F.3d 776 (9th Cir.), cert. denied, 117 S.Ct. 174 (1996). In this case, there were two defendant corporations, CCD and ADP, involved in the racketeering activities. Either one of these corporations satisfies the requirement that the RICO enterprise have a separate and ascertainable structure.
 
 C
 
 9
 Dhingra contends that IBM failed to provide any evidence to show that he conspired with the other defendants. One of the requirements for proving a conspiracy to violate RICO, in violation of § 1962(d), is a showing that the defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir.1993) (citation omitted). There is ample evidence to suggest that Dhingra was well aware of the nature and scope of the activities of Brown and ADP and that he intended to participate in those activities.
 
 
 10
 Over the course of almost two years, Dhingra purchased over $2.6 million dollars worth of IBM equipment from ADP at below-market prices. These purchases accounted for almost half of the $5.3 million dollars of equipment fraudulently obtained by ADP through Brown. Additionally, Dhingra received four shipments directly from IBM through Brown. These shipments were sent to fictitious businesses at Dhingra's address and signed for by Dhingra using fictitious names. Dhingra was further linked to Brown by a rolodex card in Brown's desk listing Dhingra's address. Finally, Dhingra's claim that he did not intend to defraud IBM and did not know of any conspiracy between Brown and ADP was undermined by evidence of Dhingra's other schemes to defraud IBM. There was more than sufficient evidence for the jury to conclude that Dhingra was aware of the essential nature and scope of the enterprise and intended to participate in its activities.
 
 D
 
 11
 Finally, Dhingra contends that IBM did not produce any evidence to show that it was injured by Dhingra's investment of the racketeering income. Under § 1962(a) it is unlawful for a person who has received any income from a pattern of racketeering activity to acquire, establish or operate any enterprise with that income. A plaintiff seeking civil damages for a § 1962(a) violation must prove both the use or investment of the racketeering income and injury as a result of this use. Nugget Hydroelectric, L.P. v. Pacific Gas and Elec, Co., 981 F.2d 429, 437 (9th Cir.1992).
 
 
 12
 The evidence supports the finding that over the course of two years, Dhingra regularly purchased stolen IBM equipment from ADP at below-market prices, resold the equipment at a profit, and then returned to ADP to purchase more equipment using proceeds from his prior sales. Thus, Dhingra repeatedly received income from the racketeering activities and reinvested his profits in the enterprise. Additionally, it is difficult to ignore the substantial injury suffered by IBM as a result of this ongoing investment. Each time Dhingra purchased additional equipment from ADP, he was depriving IBM of equipment it might otherwise have sold to legitimate customers. Dhingra's purchases alone divested IBM of $2.6 million dollars worth of equipment. This evidence supports the jury's finding of a § 1962(a) violation.
 
 II
 
 13
 Dhingra challenges, under Federal Rules of Evidence 404(b) and 403, the district court's admission of evidence that he (1) purchased IBM equipment from PCC using fictitious names; (2) used fictitious names in a warranty fraud scheme against IBM; and (3) removed serial number plates from IBM products and replaced them with counterfeit labels as part of an insurance fraud scheme perpetrated by his former employer, Ratan Lalchandani. We conclude that the district court did not abuse its discretion in admitting this evidence.
 
 
 14
 Under Rule 404(b), evidence of other acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, the crux of Dhingra's defense was that he was unaware of the enterprise, did not know the products were stolen, and did not intend to defraud IBM. The other acts evidence directly contradicts Dhingra's contentions. Dhingra had a regular practice of defrauding IBM, particularly by using fictitious names, documents, and serial numbers to avoid detection. Dhingra's involvement in these other activities strongly suggests that he was aware of the enterprise, knew the products were stolen, and intended to be an active participant in furthering the enterprise.
 
 
 15
 Additionally, the district court did not abuse its discretion in finding that the probative value of this evidence was not substantially outweighed by its prejudicial effect. See United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). In this case, the evidence was highly probative on the questions of intent and knowledge, especially considering the similarity between the activities. See United States v. Hadley, 918 F.2d 848, 852 (9th Cir.1990). Additionally, any prejudicial effect was limited by the district court's two instructions limiting the jury's use of the prior acts evidence. Id.
 
 III
 
 16
 Dhingra contends that the district court abused its discretion by failing to grant a limiting instruction regarding the use of Brown's Fifth Amendment privilege assertions against the other defendants. Dhingra probably did not properly preserve this issue on appeal, see Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir.1986), but, even if he did, the district court did not abuse its discretion in failing to give a limiting instruction. Dhingra was the first to introduce Brown's deposition testimony at trial when he read into evidence those portions of the deposition that were helpful to his case. The district court merely allowed IBM to counteract this testimony by introducing less favorable portions of Brown's deposition and then refused to limit the inferences to be drawn from Brown's testimony.
 
 IV
 
 17
 Dhingra's final contention on appeal is-that the district court abused its discretion by not allowing Dhingra to designate a new expert witness midway through trial. We hold that the district court did not abuse its discretion.
 
 
 18
 Dhingra was given the opportunity prior to trial to designate four expert witnesses, all of whom he later withdrew. A few weeks before trial, Dhingra was permitted to designate two more expert witnesses. Midway through trial, Dhingra withdrew one of the experts and announced that the other was unavailable. Dhingra then sought to designate a seventh expert and the district court refused to honor the request. We believe the district court was well within its discretion in refusing to allow Dhingra to designate a seventh expert witness in the middle of trial.
 
 
 19
 Pursuant to 18 U.S.C. § 1964(c), IBM's request for attorneys' fees on appeal is granted.
 
 
 20
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3