**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL SHAMES and GARY
GRAMKOW, on behalf of themselves
and all persons similarly situated,
*Plaintiffs-Appellants,*

v.

CALIFORNIA TRAVEL AND TOURISM
COMMISSION,
*Defendant-Appellee.*

No. 08-56750

D.C. No.
3:07-cv-02174-H-
WMC

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
March 4, 2010—San Diego, California

Filed June 8, 2010

Before: Michael Daly Hawkins, Sidney R. Thomas and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Robert C. Fellmeth (argued), Center for Public Interest Law, University of San Diego School of Law, San Diego, California, and Donald G. Rez (briefed), Sullivan, Hill, Lewin, Rez & Engel, San Diego, California, for the plaintiffs-appellants.

W. Scott Cameron (argued) and Charles L. Post (briefed), Weintraub Genshlea Chediak, Sacramento, California, and Diane Shaw (briefed), Office of the Attorney General of the State of California, Los Angeles, California, for the defendant-appellee.

## OPINION

HAWKINS, Senior Circuit Judge:

Plaintiffs Michael Shames and Gary Gramkow ("Plaintiffs") appeal the dismissal of their claims against the California Travel and Tourism Commission ("CTTC") alleging the CTTC engaged in antitrust price-fixing in violation of the Sherman Act § 1, 15 U.S.C. § 1, and improper meeting practices in violation of California's Bagley-Keene Open Meeting Act, Cal. Gov't Code §§ 11120-11132. The district court held the CTTC was shielded from antitrust liability under the "state action immunity" doctrine, and declined to exercise supplemental jurisdiction over the Bagley-Keene claim. We affirm.

## FACTS AND PROCEDURAL HISTORY

The CTTC is a "nonprofit mutual benefit corporation" created by state legislation in order to expand and develop California's tourism industry. Cal. Gov't Code § 13995.40(a). The CTTC is governed by thirty-seven commissioners, who simultaneously serve as directors. § 13995.40(a)-(b).[1] The Secretary

---

[1] All sections refer to California Government Code unless otherwise noted.

of the Business, Transportation and Housing Agency ("Secretary") chairs the CTTC. §§ 13995.20(k), 13995.40(b)(1). Twelve commissioners are appointed by the governor, while the remaining twenty-four are elected by the tourism industry itself.[2] § 13995.40(b)(2)-(3).

In 2006, the passenger rental car industry proposed changes to state bill A.B. 2592 which were subsequently enacted. *See* Cal. Civil Code § 1936.01. Under the bill, the passenger rental car industry became the fifth tourism industry category under the CTTC scheme and agreed to pay a high assessment fee, greatly increasing the CTTC's budget. In exchange for this increased funding, the passenger rental car industry was allowed to "unbundle" fees charged to customers and itemize such fees separately from the base rental rate. Significantly, the adopted changes allowed the companies to "pass on some or all of the assessment to customers." § 13995.65(f).

Plaintiffs allege this led to the imposition of two specific fees on rental car customers. First, pursuant to an agreement between the passenger rental car industry and the CTTC, a 2.5% tourism assessment fee was added to the cost of a car rental which, in turn, helped fund the CTTC. Plaintiffs allege that the CTTC then colluded with the passenger rental car industry, fixing rental car prices by passing on the 2.5% tourism assessment fee to customers. Second, the passenger rental car industry "unbundled" the already-existing airport concession fee charged to customers to pay airports for the right to conduct business on airport premises; this fee has traditionally amounted to 9% of the rental price. The bill permitted the passenger rental car industry to charge this concession fee sepa-

___

[2]The tourism industry is represented by five industry categories, one of which is the passenger rental car industry, which was added in 2006. Each category is allotted a number of commission seats based on the weighted percentage of assessments paid to the CTTC by that category. § 13995.40(d). Unlike the other categories, the passenger rental car industry is specifically limited to six commission seats regardless of the percentage of assessments paid to the CTTC. § 13995.40.5(a).

rately from the base rental rate. According to Plaintiffs, the CTTC also colluded with the passenger rental car industry in passing the 9% concession fee on to customers as an uniform add-on charge. Plaintiffs allege that these agreements between the rental car companies and the CTTC constituted price-fixing of rental car rates in violation of the Sherman Act § 1. Plaintiffs also claim the CTTC committed a host of Bagley-Keene Open Meeting Act violations, specifically, failing to adhere to detailed notice requirements and impermissibly holding closed session meetings.

Granting the CTTC's Rule 12(b)(6) motion to dismiss, the district court dismissed all claims against the CTTC, finding it was entitled to state action immunity from antitrust liability and declining to exercise supplemental jurisdiction over the remaining Bagley-Keene Act state law claim. The district court also held that the dismissed claims against the CTTC were adequately severable from the pending claims against the passenger rental car companies and entered final judgment for the CTTC.

## STANDARD OF REVIEW

We review the dismissal of the antitrust claim against the CTTC de novo. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). Because the appeal is from an order granting a motion to dismiss, we assume the factual allegations of the complaint to be true. *Id.* We review a district court's decision whether to retain jurisdiction over supplemental claims when the original federal claims are dismissed for an abuse of discretion. *Tritchler v. County of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004).

## DISCUSSION

### I.   State Action Immunity from Antitrust Liability

We assume without deciding that the Plaintiffs' allegations that the CTTC conspired with the passenger rental car compa-

nies to pass on CTTC tourism assessments, enforcing the agreement against non-complying rental car companies, and turning the 9% airport concession fee into a rate hike, sufficiently allege an antitrust violation under the Sherman Act § 1. We need not consider the legality of the alleged conduct; we are instead called to determine whether the district court nonetheless properly dismissed the Plaintiffs' claim against the CTTC because the agency's alleged conduct qualifies for "state action immunity."

The Supreme Court introduced the doctrine of "state action immunity" in *Parker v. Brown*, when it held that the Sherman Act did not apply to state anticompetitive conduct. 317 U.S. 341, 350-52 (1943). The Court reasoned that the Sherman Act was primarily concerned with *individual* anticompetitive action, not states acting in their sovereign capacity. *Id.*

**[1]** The Court revisited the doctrine in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) ("*Midcal*"), when a wholesale wine distributor challenged California's wine resale statutes. The statutes required wine producers to file price schedules with the state; however, the wine dealers themselves set the prices without any state oversight or control. *Id.* at 99-101. The Court established a two-pronged test to determine when state involvement in anticompetitive conduct can render a party eligible for immunity: (1) the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy"; and (2) the policy must be "actively supervised" by the state itself. *Id*. at 105 (internal quotation marks omitted). The Court held that although California's legislative policy clearly stated and allowed resale price maintenance, satisfying the first prong of the test, the price maintenance system failed the second prong because the State did not "actively supervise" the conduct of the wine dealers. *Id.* at 105-06. With these principles in mind, we turn to their application in this case.

## A.    *Midcal*'s First Prong: "Clearly Articulated and Affirmatively Expressed as State Policy"

### 1.    Specific Authorization vs. Reasonably Foreseeable

As a preliminary matter, we must first resolve a dispute among the parties over the proper standard in evaluating *Midcal*'s first prong. Plaintiffs argue that the district court wrongly applied a lesser "foreseeability" standard in place of *Midcal*'s "clear articulation" requirement, which, they argue, requires a more specific or express authorization of any anticompetitive conduct.

[2] The CTTC, however, correctly points out that the Supreme Court has not required express authorization of particular anticompetitive acts and has applied state action immunity when the actions were a foreseeable result of a broader statutory authorization. For example, in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991) ("*Omni*"), a billboard company sued the city for passing an ordinance effectively preventing the company from entering the billboard market. *Id.* at 368-69. The city allegedly passed the ordinance to favor the existing billboard company, a local company with deep roots in the community. *Id.* at 367. The Court held that the city's actions were nonetheless entitled to *Parker* state action immunity because they were an "authorized implementation of state policy." *Id.* at 370-71. The Court reasoned that the city acted within its state-given authority to pass a zoning ordinance, and that suppression of competition was a foreseeable consequence of passing such an ordinance. *Id.* at 373. The Court rejected "the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition," and held that "[i]t is enough . . . if suppression of competition is the 'foreseeable result' of what the statute authorizes." *Id*. at 372-73.

Similarly, in *Town of Hallie v. City of Eau Claire*, neighboring towns filed suit against the City of Eau Claire, arguing that the city held an unlawful monopoly over sewage treatment services. 471 U.S. 34, 37 (1985). The Court held that the city's actions were immunized because they were a "foreseeable result" of the state legislature's statutory authorization to municipalities to provide (or refuse to provide) sewage services to unincorporated areas. *Id.* at 42. The Court again noted that a legislature need not expressly state in the statute or legislative history that it intends for the action to have anticompetitive effects, so long as the legislature had contemplated the action that was taken. *Id.* ("We think it is clear that anticompetitive effects logically would result from this broad authority to regulate"). The Court also rejected the contention that the city needed to show the state had "compelled" it to act. *Id.* at 45; *see also So. Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 58 (1985) ("The *Midcal* test does not expressly provide that the actions of a private party *must be compelled* by a State in order to be protected from the federal antitrust laws.") (emphasis added).

In contrast, Plaintiffs here rely principally on one of our previous decisions, *Columbia Steel Casting Co., Inc. v. Portland Gen. Electric Co.*, 111 F.3d 1427 (9th Cir. 1997). In *Columbia Steel*, two utility companies agreed not to compete with each other in providing service within certain territories, and argued that the Oregon Public Utilities Commission ("OPUC") had authorized their non-competitive conduct when it previously approved a property exchange, rendering them eligible for state-action immunity. *Id.* at 1433-36. We held that the companies' actions did not qualify for state action immunity because the OPUC "did not specifically and clearly authorize[ ] by the relevant statutory process" their anticompetitive conduct. *Id.* at 1441 (citation omitted). Reasoning that when OPUC approved the property exchange, it acted only pursuant to its authority to approve sales and leases, and not pursuant to statutes giving it the authority to displace competition, we determined OPUC did not "clearly

articulate" a state policy to displace competition. *Id.* at 1437. Indeed, the City of Portland had specifically considered and declined to approve the establishment of exclusive territories for the utilities, and the OPUC-approved agreement purported to comply with and implement the city's decision. *Id.* at 1433-34.

In addressing the companies' argument that their conduct was a foreseeable result of OPUC's property-exchange approval, we held that "foreseeability" could not be substituted for *Midcal*'s "clear articulation" requirement. *Id.* at 1443. However, Plaintiffs attempt to read this statement a bit too broadly, for in *Columbia Steel* we also indicated that foreseeability *would* apply in a situation in which anticompetitive conduct was " 'authorized, but not compelled.' " *Id.* at 1444 (quoting *Town of Hallie*, 471 U.S. at 36) (emphasis removed). In those situations, the foreseeability approach is used to determine the reach of the antitrust immunity (since not every action by a state actor will necessarily be immune). *See id.* at 1443 (citing *Medic Air Corp. v. Air Ambulance Auth.*, 843 F.2d 1187, 1189 (9th Cir. 1988)). Thus, *Columbia Steel* did not *reject* a foreseeability test, but clarified when it is applicable. *See Redwood Empire Life Support v. County of Sonoma*, 190 F.3d 949, 955 (9th Cir. 1999) (applying "logical and foreseeable result" test post-*Columbia Steel*).[3]

**[3]** Thus, in light of these precedents, the standard to apply in analyzing whether the CTTC's alleged conduct was pursuant to a "clearly articulated" state policy is to examine whether the agency acted pursuant to its statutory authority, and, if so, whether the anticompetitive conduct was foreseeable given that statutory authorization.

---

[3]The foreseeability test understandably had little application in *Columbia Steel* because, as discussed above, the Portland City Council had *not* authorized exclusive service areas for the utilities, but actually specifically *disapproved* the utilities' attempt to establish exclusive territories, and approved only the exchange of utilities' properties. 111 F.3d at 1433-44.

## 2.    Application of the Reasonably Foreseeable Test

**[4]** The California Legislature explicitly authorized tourism assessment fees on passenger car rentals for the funding of California tourism: "[t]he California Travel and Tourism Commission shall submit a referendum to the passenger rental car industry as soon as possible . . . [it] shall propose an assessment level upon the passenger rental car industry." § 13995.92(a). The CTTC was to be the beneficiary of the tourism assessment fee, and was authorized to collect the assessments from the rental car companies. §§ 13995.65-73, .92. The statute expressly allows the fees to be "passed on" to customers: "[a]n assessed business *may pass on some or all* of the assessment to customers." § 13995.65(f) (emphasis added). Another statute explicitly recognizes that assessment fees are "the charge[s] collected by a rental company *from a renter* that ha[ve] been established by the [CTTC] pursuant to Section 13995.65 of the Government Code." Cal. Civ. Code § 1936.01(a)(3) (emphasis added).

Although Plaintiffs emphasize that the provisions at issue here do not *require* the fees to be passed on to consumers, both the Supreme Court and this circuit have made clear that for state action immunity to apply, the anticompetitive conduct need not be compelled by the state. *Town of Hallie*, 471 U.S. at 45 ("compulsion is simply unnecessary"); *Hass v. Oregon State Bar*, 883 F.2d 1453, 1457 (9th Cir. 1989) ("The legislature need not detail or compel the specific anticompetitive actions at issue, nor need it explicitly state that it expects the regulated party 'to engage in conduct that would have anticompetitive effects.' ") (quoting *Town of Hallie*, 471 U.S. at 42). Indeed, the legislature need not even "expressly *permit* the challenged conduct." *Hass*, 883 F.2d at 1457 (citing *So. Motor Carriers*, 471 U.S. at 63-65)).

Thus, the critical issue is not whether the alleged conduct here was compelled, but whether it was authorized.[4] Plaintiffs

---

[4]We grant Plaintiffs' Request for Judicial Notice regarding arguments raised by the CTTC in related case *In re Tourism Assessment Fee Litiga-*

argue that the statutory language permitting the pass through ("may pass some or all") should be read not as authorizing an anticompetitive agreement to pass the fees on, but as an indication that the legislature intended for the individual car companies to make the decision whether to pass the fee on to consumers.

**[5]** However, the provisions here are comparable to those in which courts have found anticompetitive conduct legislatively authorized but not compelled. Similar to the statutes in *Town of Hallie*, which granted authority to the cities to handle sewage service, but which did not expressly mention anticompetitive, monopolistic conduct, 471 U.S. at 41-42, the statutes in the current case grant authority to the passenger rental car companies to "pass on" assessment fees, and allow the CTTC to enforce and collect those fees, even if they do not expressly mention anticompetitive conduct. § 13995.65(f), .71. Likewise, in *Hass*, we held that the Oregon State Bar was authorized to establish a minimum legal malpractice insurance requirement and require attorneys to purchase such coverage from the State Bar, even though the statute did not contain such a requirement and granted only general authority to do "whatever is necessary and convenient" to implement malpractice coverage. 883 F.2d at 1458-59.

Moreover, the history underlying the legislation at issue here strongly suggests that the legislature envisioned the fee being uniformly passed on to rental car customers. The proposed bill A.B. 2592 increased the assessment against rental car companies *only if* the bill also amended the companies' ability to separately itemize the rate, airport concession fee, and tourism commission assessment. Calif. Bill Analysis,

*tion*, No. 08-CV-1796-MMA (S.D. Cal.). However, this does not impact the result in this case, as we conclude the CTTC does not take flatly contradictory positions in the two cases regarding whether its actions were authorized versus compelled.

Senate Floor, 2005-2006 Regular Session, Assembly Bill 2592, August 24, 2006 ("Calif. Bill Analysis").[5] In an initial statement of reasons accompanying the proposed amendments, the Business, Transportation and Housing Agency, Office of Tourism indicated the significance of this pass-through provision:

> If the ability to pass the assessment on to the consumer was prohibited, the passenger car rental industry would have to pay the assessment from its revenues and it would affect net profit. This was not the intent of the legislation.

Title 10, Chap. 7.65, §§ 5350-5358.1, Passenger Car Rental Industry Tourism Assessment, Initial Statement of Reasons, p.2, *available at* http://www.visitCalifornia.de/media/uploads/files/InitialStatementofReasons.RentalCar Assessment.pdf.

Several provisions refer to the tourism fee being collected "from the renter," and the Legislature also gave an express grant of state antitrust immunity to state actors complying with the enabling statute, also demonstrating that anticompetitive conduct was foreseeable at the time the provisions were enacted. § 13995.90. The legislature was also expressly advised of the likely impact to consumers: in opposition to the bill, the Center for Public Interest Law warned that the bill would lead to an "industry-wide price hike" because companies would "merely maintain their current price levels, but instead of including the airport concession fee in the initial charge, it is now added on at the end, on top of a charge that historically included it." Calif. Bill Analysis, A.B. 2592 Senate, 8/24/2006; *see Springs Ambulance Serv., Inc. v. Rancho Mirage*, 745 F.2d 1270, 1273 (9th Cir. 1984) (a sufficiently

---

[5]As the district court observed, "there would have been little reason for the rental car industry to propose the amendments to A.B. 2592 if they would be unable to recoup the cost of increasing the CTTC's budget."

articulated state policy exists if the challenged restraint is a "necessary or reasonable consequence" of engaging in the authorized activity) (internal quotation marks, citation and emphasis omitted).

[6] Plaintiffs suggest that the statute nonetheless does not authorize the alleged group anticompetitive conduct orchestrated with the help of the CTTC. However, in *Omni* the Supreme Court was clear that there is no "conspiracy" exception to state action immunity, noting that "it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them" and that otherwise a conspiracy exception would "virtually swallow up the *Parker* rule." 499 U.S. at 374-75. Thus, any claim of collusion or conspiracy between the CTTC and the passenger rental car companies would not defeat immunity, so long as the CTTC otherwise qualifies for state action immunity. Because there is a clear grant of authority permitting the pass-through of the assessments to rental car customers, as well as evidence that an industry-wide add-on was "surely within the contemplation of the legislature," *Springs Ambulance*, 745 F.2d at 1273, the CTTC's alleged conduct in facilitating this result was at the very least a "foreseeable consequence of the legislative grant of authority." *Hass*, 883 F.2d at 1459.

We therefore affirm the district court's conclusion that the CTTC's alleged anticompetitive conduct constitutes an authorized and reasonably foreseeable result, and thus satisfies *Midcal*'s first prong of being pursuant to a "clearly articulated state policy."

## B.  *Midcal*'s Second Prong: Active State Supervision

*Midcal*'s second prong ensures that private price-fixing agreements with little or no state involvement do not displace "the national policy in favor of competition." 445 U.S. at 106. The Court was primarily concerned that without adequate state supervision, private parties would act to further their

own interests as opposed to the interests of the state. *Id.*; *see also Patrick v. Burget*, 486 U.S. 94, 101 (1988) (stating that without active state supervision, "there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests").

**[7]** However, when municipalities or other state entities (as opposed to purely private actors) are acting under the direction of state law, the Court has held that they do not need to satisfy *Midcal*'s active state supervision prong. *Town of Hallie*, 471 U.S. at 46. In *Town of Hallie*, the Court reasoned that where a municipality is concerned, there is very little danger "that it is involved in a private price-fixing arrangement," which removes the need for the state to supervise its "execution of . . . a properly delegated function." *Id.* at 47 (emphasis omitted). In a footnote, the Court also suggested that the same rationale would apply to state agencies. *Id.* at 46 n.10.

In *Hass*, we relied on that footnote in *Town of Hallie* to hold that the Oregon State Bar did not need to satisfy *Midcal*'s active state supervision prong to qualify for state action immunity. 883 F.2d at 1459-61. We reasoned that the Oregon State Bar was similar in nature to a municipality, noting that the Oregon State Bar's purpose in benefitting the public through regulating lawyers, combined with its records and accounts being open for public inspection and subject to audits, pointed to it being a public body. *Id.* at 1459-60.

Likewise, here, the CTTC is not a private party, but a state agency created by statute, designed to promote tourism which the California legislature found is "vital" to the state's economy. § 13995.1(d)(1). The CTTC was organized to promote a state purpose, namely to increase travel and tourism in the state of California. § 13995.41. The CTTC and the Oregon State Bar in *Hass* also share organizational similarities in that they are both subject to independent audits, must give public

notice of their meetings, and benefit "the public interest." *Hass*, 883 F.2d at 1460; §§ 13995.40, .50.

Plaintiffs contend, however, that even if the CTTC is a state agency "for some purposes," it is still industry-controlled, and thus is distinguishable from *Hass*. However, the CTTC is not entirely controlled by industry, as it has twelve governor-appointed commissioners and a governor-appointed Secretary. Although there are twenty-four industry-appointed commissioners, these positions come from five different tourism industry categories whose interests will not always align, and the passenger car rental industry itself is limited to only six commissioners. § 13995.40.5(a). *See Hass*, 883 F.2d at 1460 (noting that only three of the fifteen members of the Oregon State Bar were nonlawyers).

Moreover, the CTTC is also under the oversight of the state via a gubernatorially-appointed Secretary. The Secretary has the power to remove elected commissioners found guilty of "abuse of office or moral turpitude." § 13395.40(e). Additionally, the Secretary holds veto power over the CTTC in various circumstances, including the use of state funds and situations in which the Secretary determines there is a conflict of interest. § 13995.51(b). The CTTC's annual marketing plan must be reviewed and approved by the Secretary before adoption, and may only be overridden by a three-fifths majority vote. § 13995.45(d).

**[8]** Despite the mix of public and private interests at play, looking at the totality of the circumstances, the CTTC possesses enough of the qualities of a state agency, coupled with state oversight in the form of the governor-appointed commissioners and Secretary, to hold that the CTTC is analogous to the Oregon State Bar in *Hass* and also exempt from *Midcal*'s "active state supervision" requirement. We therefore affirm the district court's determination that the CTTC is entitled to state action immunity from antitrust suit.

## II. Bagley-Keene Act

The California Legislature enacted the Bagley-Keene Open Meeting Act to ensure that state bodies conduct open and public meetings, specifically by implementing detailed notice requirements and limiting closed sessions. §§ 11120-11132; *S. Cal. Edison Co. v. Peevey*, 74 P.3d 795, 797 (Cal. 2003). The district court initially heard the Bagley-Keene Act claim alongside the federal antitrust claim pursuant to 28 U.S.C. § 1367(a). After dismissing the antitrust claim against the CTTC, the district court dismissed the Bagley-Keene Act claim without prejudice.

**[9]** Dismissal of the claim was not an abuse of discretion in these circumstances. *Tritchler*, 358 F.3d at 1153. The district court properly exercised its discretion and declined to employ supplemental jurisdiction, reasoning that it had already "dismissed the only federal claim against the CTTC," and noting that the Act "may implicate questions better addressed by the California courts in the first instance." *See* 28 U.S.C. § 1367(c)(1), (3); *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1169 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of the antitrust price-fixing and Bagley-Keene Act claims. All pending motions not otherwise disposed of herein are denied as moot.