**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL SHAMES and GARY
GRAMKOW, on behalf of themselves
and all persons similarly situated,
        *Plaintiffs-Appellants,*

        v.

CALIFORNIA TRAVEL AND TOURISM
COMMISSION,
        *Defendant-Appellee.*

No. 08-56750

D.C. No.
3:07-cv-02174-H-
WMC

ORDER AND
OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, United States District Judge, Presiding

Argued and Submitted March 4, 2010
University of San Diego School of Law
San Diego, California

Filed November 24, 2010

Before: Michael Daly Hawkins, Sidney R. Thomas and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hawkins

18733

## COUNSEL

Robert C. Fellmeth (argued), Center for Public Interest Law, University of San Diego School of Law, San Diego, California, and Donald G. Rez (briefed), Sullivan, Hill, Lewin, Rez & Engel, San Diego, California, for the plaintiffs-appellants.

W. Scott Cameron (argued) and Charles L. Post (briefed), Weintraub Genshlea Chediak, Sacramento, California, and Diane Shaw (briefed), Office of the Attorney General of the State of California, Los Angeles, California, for the defendant-appellee.

---

## ORDER

The Petition for Rehearing and Rehearing En Banc of Plaintiffs-Appellants is granted for the purpose of withdrawing the Opinion filed on June 8, 2010 and published at 607 F.3d 611 (9th Cir. 2010), and substituting a superseding Opinion, filed concurrently herewith.

The parties may file new petitions for rehearing or rehearing en banc as to the new Opinion in accordance with the Federal Rules of Appellate Procedure.

---

## OPINION

HAWKINS, Senior Circuit Judge:

Plaintiffs Michael Shames and Gary Gramkow ("Plaintiffs") appeal the dismissal of their claims against the California Travel and Tourism Commission ("CTTC") alleging the CTTC engaged in antitrust price-fixing in violation of the Sherman Act § 1, 15 U.S.C. § 1, and improper meeting practices in violation of California's Bagley-Keene Open Meeting Act, Cal. Gov't Code §§ 11120-11132. The district court held the CTTC was shielded from antitrust liability under the "state action immunity" doctrine, and declined to exercise supplemental jurisdiction over the Bagley-Keene claim. We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

A "nonprofit mutual benefit corporation" created by state legislation in order to expand and develop California's tourism industry, Cal. Gov't Code § 13995.40(a), the CTTC is governed by thirty-seven commissioners, who simultaneously serve as directors. § 13995.40(a)-(b).[1] The Secretary of the Business, Transportation and Housing Agency ("Secretary") chairs the CTTC. §§ 13995.20(k), 13995.40(b)(1). Twelve commissioners are appointed by the governor, while the remaining twenty-four are elected by the tourism industry itself.[2] § 13995.40(b)(2)-(3).

In 2006, the passenger rental car industry proposed changes to California law which were subsequently enacted. *See* Cal. Civ. Code § 1936.01. Under these changes, the passenger rental car industry became the fifth tourism industry category under the CTTC scheme and agreed to pay a high assessment fee, greatly increasing the CTTC's budget. In exchange for this increased funding, the passenger rental car industry was allowed to "unbundle" fees charged to customers and itemize such fees separately from the base rental rate. Significantly, the adopted changes allowed the companies to "pass on some or all of the assessment to customers." § 13995.65(f).

Plaintiffs allege this led to the imposition of two specific fees on rental car customers. First, pursuant to an agreement between the passenger rental car industry and the CTTC, a 2.5% tourism assessment fee was added to the cost of a car

---

[1]All sections refer to California Government Code unless otherwise noted.

[2]The tourism industry is represented by five industry categories, one of which is the passenger rental car industry, which was added in 2006. Each category is allotted a number of commission seats based on the weighted percentage of assessments paid to the CTTC by that category. § 13995.40(d). Unlike the other categories, the passenger rental car industry is specifically limited to six commission seats regardless of the percentage of assessments paid to the CTTC. § 13995.40.5(a).

rental which, in turn, helped fund the CTTC. Plaintiffs allege that the CTTC then colluded with the passenger rental car industry, fixing rental car prices by passing on the 2.5% tourism assessment fee to customers. Second, the passenger rental car industry "unbundled" the already-existing airport concession fee charged to customers to pay airports for the right to conduct business on airport premises; this fee has traditionally amounted to 9% of the rental price. The bill permitted the passenger rental car industry to charge this concession fee separately from the base rental rate. According to Plaintiffs, the CTTC also colluded with the passenger rental car industry in passing the 9% concession fee on to customers as an uniform add-on charge. Plaintiffs allege that these agreements between the rental car companies and the CTTC constituted price-fixing of rental car rates in violation of the Sherman Act § 1. Plaintiffs also claim the CTTC committed a host of Bagley-Keene Open Meeting Act violations, specifically, failing to adhere to detailed notice requirements and impermissibly holding closed session meetings.

Granting the CTTC's Rule 12(b)(6) motion to dismiss, the district court dismissed all claims against the CTTC, finding it was entitled to state action immunity from antitrust liability and declining to exercise supplemental jurisdiction over the remaining Bagley-Keene Act state law claim. The district court also held that the dismissed claims against the CTTC were adequately severable from the pending claims against the passenger rental car companies and entered final judgment for the CTTC.

## STANDARD OF REVIEW

We review the dismissal of the antitrust claim against the CTTC de novo. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). Because the appeal is from an order granting a motion to dismiss, we assume the factual allegations of the complaint to be true. *Id.* We review a district court's decision whether to retain jurisdiction over sup-

plemental claims when the original federal claims are dismissed for an abuse of discretion. *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004).

## DISCUSSION

### I.  State Action Immunity from Antitrust Liability

We assume without deciding that the Plaintiffs' allegations that the CTTC conspired with the passenger rental car companies to pass on CTTC tourism assessments, enforcing the agreement against non-complying rental car companies, and turning the 9% airport concession fee into a rate hike, sufficiently allege an antitrust violation under the Sherman Act § 1. We need not consider the legality of the alleged conduct; we are instead called to determine whether the district court nonetheless properly dismissed the Plaintiffs' claim against the CTTC because the agency's alleged conduct qualifies for "state action immunity."

**[1]** The Supreme Court introduced the doctrine of "state action immunity" in *Parker v. Brown*, when it held that the Sherman Act did not apply to state anticompetitive conduct. 317 U.S. 341, 350-52 (1943). The Court reasoned that the Sherman Act was primarily concerned with *individual* anticompetitive action, not states acting in their sovereign capacity. *Id.*

**[2]** The Court revisited the doctrine in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) ("*Midcal*"), when a wholesale wine distributor challenged California's wine resale statutes. The statutes required wine producers to file price schedules with the state; however, the wine dealers themselves set the prices without any state oversight or control. *Id.* at 99-101. The Court established a two-pronged test to determine when state involvement in anticompetitive conduct can render a party eligible for immunity: (1) the challenged restraint must be "one

clearly articulated and affirmatively expressed as state policy"; and (2) the policy must be "actively supervised" by the state itself. *Id*. at 105 (internal quotation marks omitted). The Court held that although California's legislative policy clearly stated and allowed resale price maintenance, satisfying the first prong of the test, the price maintenance system failed the second prong because the State did not "actively supervise" the conduct of the wine dealers. *Id.* at 105-06. With these principles in mind, we turn to their application in this case.

As a preliminary matter, we must first resolve a dispute among the parties over the proper standard in evaluating *Midcal*'s first prong. Plaintiffs argue that the district court wrongly applied a lesser "foreseeability" standard in place of *Midcal*'s "clear articulation" requirement.

**[3]** The CTTC correctly points out that the Supreme Court has not required express authorization of particular anticompetitive acts and has applied state action immunity when the actions were a foreseeable result of a broader statutory authorization. For example, in *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) ("*Omni*"), a billboard company sued the city for passing an ordinance effectively preventing the company from entering the billboard market. *Id.* at 368-69. The city allegedly passed the ordinance to favor the existing billboard company, a local company with deep roots in the community. *Id.* at 367. The Court held that the city's actions were nonetheless entitled to *Parker* state action immunity because they were an "authorized implementation of state policy." *Id.* at 370-71. The Court reasoned that the city acted within its state-given authority to pass a zoning ordinance, and that suppression of competition was a foreseeable consequence of passing such an ordinance. *Id.* at 373. The Court rejected "the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition," and held that "[i]t is enough . . . if suppression of competition is the 'foreseeable result' of what the statute authorizes." *Id*. at 372-73.

Similarly, in *Town of Hallie v. City of Eau Claire*, neighboring towns filed suit against the City of Eau Claire, arguing that the city held an unlawful monopoly over sewage treatment services. 471 U.S. 34, 37 (1985). The Court held that the city's actions were immunized because they were a "foreseeable result" of the state legislature's statutory authorization to municipalities to provide (or refuse to provide) sewage services to unincorporated areas. *Id.* at 42. The Court again noted that a legislature need not expressly state in the statute or legislative history that it intends for the action to have anticompetitive effects, so long as the legislature had contemplated the action that was taken. *Id.* ("We think it is clear that anticompetitive effects logically would result from this broad authority to regulate."). The Court also rejected the contention that the city needed to show the state had "compelled" it to act. *Id.* at 45; *see also So. Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 58 (1985) ("The *Midcal* test does not expressly provide that the actions of a private party *must be compelled* by a State in order to be protected from the federal antitrust laws.") (emphasis added).

**[4]** However, in those cases, there was at a minimum a clear and affirmative state policy to displace pure competition with regulation or monopoly. *See, e.g.*, *Omni*, 499 U.S. at 373 ("The very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants."). The real question in *Town of Hallie* and *Omni* was thus whether the particular alleged anticompetitive conduct was a foreseeable result of the overall anticompetitive scheme, such as granting a monopoly to cities providing waste services. Where there is no indication that a state has acted to displace competition in the first place, state action immunity will not apply. *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp.*, 940 F.2d 397, 402-03 (9th Cir. 1991).

**[5]** The *Midcal* test seeks to ensure that "particular anticompetitive mechanisms operate because of a deliberate and

intended state policy," and not simply because the State has acted through inadvertence. *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992). The state-action immunity doctrine is "disfavored," and is to be interpreted narrowly, as "a broad interpretation of the doctrine may inadvertently extend immunity to anticompetitive activity which the states did not intend to sanction." *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 941 (9th Cir. 1996) (citing *Ticor*, 504 U.S. at 635-36).

We have previously addressed the proper application of the foreseeability language used by the Supreme Court. As we explained in *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1443-44 (9th Cir. 1997), a foreseeable result cannot *create* state authorization itself. *See id.* at 1444 ("[E]xpress authorization is the necessary predicate for the Supreme Court's foreseeability test.") (internal quotation marks and alteration omitted). Rather, "foreseeability" is to be used in deciding the *reach* of antitrust immunity that stems from an already authorized monopoly, price regulation, or other disruption in economic competition. In other words, a state may unintentionally create a scheme that in some way fosters anticompetitive conduct. But this unintended consequence—even if foreseeable—does not satisfy the "clear articulation" prong of *Midcal* because the underlying scheme does not indicate an intention to displace competition. *See id.* at 1444 (discussing *Town of Hallie*).

For example, in *Medic Air Corp. v. Air Ambulance Auth.*, 843 F.2d 1187 (9th Cir. 1988), we applied the clear articulation/foreseeability test, holding that a county board of health had clearly intended to displace competition by establishing a monopoly in the market of dispatching air ambulances in the county, and that state action immunity therefore shielded this monopoly. *Id.* at 1189. However, we further held that this immunity did *not* reach anticompetitive conduct in the ambulance *service* market, because this was "not a 'necessary or reasonable consequence' of the decision to establish an exclu-

sive *dispatcher*." *Id.* (emphasis added); *see also Redwood Empire Life Support v. Cnty. of Sonoma*, 190 F.3d 949, 955 (9th Cir. 1999) (Emergency Medical Services Act permitting establishment of exclusive operating areas "has the foreseeable effect of excluding some providers from a local EMS system"); *Nugget Hydroelectric L.P v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 434 (9th Cir. 1992) (alleged anticompetitive conduct was foreseeable result of regulatory authority granted to California Public Utility Commission to specify "prices, terms and conditions" for sale of power).

[6] In this case, there is no indication California authorized interference by the CTTC with normal industry competition. There is no authorization by the California legislature of anticompetitive regulation or monopoly in the rental car field. The CTTC is not a regulatory body and has no control over the prices established by the rental car companies. The legislature merely imposed an assessment on the rental car companies and gave the CTTC the authority to spend these funds to promote California tourism. Cal. Gov't Code §§ 13995.45; 13995.57. Even though the ultimate economic *result* of the legislation may be foreseeable (i.e., that rental car companies would raise their rates to offset the 2.5% assessment), the alleged anticompetitive *conduct*—that the CTTC facilitated a collusive agreement among rental car companies to uniformly pass through these charges to consumers and ensured rogue companies adhered to the agreement—is not a "natural and foreseeable" result of the limited power granted to the CTTC. If anything, the statute appears to expressly leave the decision of whether to pass the charge through to consumers to the wisdom of the individual rental car company: "an assessed business *may* pass on *some or all* of the assessment to customers." § 13996.65(f) (emphasis added). Individual action may be permitted by this provision, but the CTTC's alleged interference with market forces is not.[3] We therefore reverse the district court's dismissal based on state action immunity.

---

[3]Because we conclude the CTTC was not acting pursuant to a "clearly articulated" state policy, we need not consider *Midcal*'s second prong of "active state supervision." *United States v. Title Ins. Rating Bureau of Ariz., Inc.*, 700 F.2d 1247, 1253 (9th Cir. 1983).

## II.   Bagley-Keene Act

**[7]** The California Legislature enacted the Bagley-Keene Open Meeting Act to ensure that state bodies conduct open and public meetings, specifically by implementing detailed notice requirements and limiting closed sessions. §§ 11120-11132; *S. Cal. Edison Co. v. Peevey*, 74 P.3d 795, 797 (Cal. 2003). The district court initially heard the Bagley-Keene Act claim alongside the federal antitrust claim pursuant to 28 U.S.C. § 1367(a), but after dismissing the antitrust claim against the CTTC, it dismissed the Bagley-Keene Act claim without prejudice. Because we reverse the dismissal of the federal claim against the CTTC, we remand for the court to reconsider whether it should exercise supplemental jurisdiction of this state law claim. *See Fang v. United States*, 140 F.3d 1238, 1244 (9th Cir. 1998).

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of the antitrust price-fixing and Bagley-Keene Act claims, and **REMAND** for further proceedings consistent with this Opinion. All pending motions not otherwise disposed of herein are denied as moot.